IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES SULTAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-cv-1229-MJR-SCW |
| | ) | |
| DR. JAMES FENOGLIO, | ) | |
| PHIL MARTIN, | ) | |
| ELAINE HARDY, | ) | |
| TAMMY KIMMEL, | ) | |
| WEXFORD HEALTH SERVICES, | ) | |
| ROBERT BOLDREY, and | ) | |
| BENJAMIN HABING, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

REAGAN, Chief Judge:

### A.   Introduction and Procedural History

While incarcerated at Lawrence Correctional Center within the Illinois Department of Corrections (IDOC), Charles Sultan (Plaintiff) filed a prisoner civil rights complaint in this Court under 42 U.S.C. 1983. The complaint asserted claims based upon unsanitary conditions, deliberate indifference to his medical needs, and medical negligence. On threshold review of the complaint in January 2013, the undersigned dismissed certain claims and allowed the suit to proceed as to eight Defendants (Doc. 6), one of whom (Defendant Sucher) was dismissed in an October 2013 Order (Doc. 95).

In February 2014, the undersigned dismissed with prejudice the remaining claims under Federal Rule of Civil Procedure 41(b), due to Plaintiff's failure to follow

court orders and prosecute the case, including failure to pay the $2.02 initial partial filing fee as ordered or show cause for failing to do so (Doc. 116). In January 2015, the United States Court of Appeals for the Seventh Circuit vacated that dismissal and remanded the case to this Court for further proceedings (1/27/15 mandate, Doc. 135).

Now before the Court is a Report and Recommendation (R&R) which predates the appeal. Magistrate Judge Stephen C. Williams issued an R&R (Doc. 104) on two summary judgment motions filed by the two sets of Defendants (Docs. 57 and 68). He recommended that the undersigned partially grant and partially deny the summary judgment motions. Defendants did not object. Plaintiff secured an extension of time to file an objection to the R&R and timely did so (Doc. 108).

On February 9, 2015, following the Seventh Circuit's remand of this case, Judge Williams reinstated the R&R and Plaintiff's objection (*see* Doc. 140). The undersigned then set a deadline for Defendants to respond to Plaintiff's objection, pursuant to Local Rule 73.1(b). The two sets of Defendants filed their responses on March 3, 2015. Defendants Boldrey, Habing and Martin ("the IDOC Defendants") responded at Doc. 144; Defendants Fenoglio, Hardy, Kimmel and Wexford ("the Wexford Defendants") responded at Doc. 145. Although the Local Rules do not provide for a supplemental objection (or a *reply* to a response to an objection) and Plaintiff did not obtain leave to file either, the Court will consider Plaintiff's March 30, 2015 "Supplemental Objection" (Doc. 147).

Timely objections having been filed, the District Judge undertakes de novo review of the portions of the Report to which Plaintiff specifically objected. **28 U.S.C.**

**636(b)(1); FED. R. CIV. P. 72(b); SDIL LOCAL RULE 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.* For the reasons stated below, the Court overrules Plaintiff's objections, adopts Judge Williams' Report in its entirety, and grants in part/denies in part Defendants' summary judgment motions. Analysis begins with reference to the applicable legal standards.

B. <u>Applicable Legal Standards</u>

→ **SUMMARY JUDGMENT**

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986); FED. R. CIV. P. 56.** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't,* **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Village of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences, and resolves doubts, in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Summary judgment is "not an appropriate occasion for weighing the evidence" and should not be granted if the evidence before the court supports alternate inferences. *Dowden v. Polymer Raymond, Inc.*, **966 F.2d 1206, 1207-08 (7th Cir. 1992).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004),** *cert. denied,* **546 U.S. 1032 (2005).**

When a motion for summary judgment is made on the ground of failure to exhaust (i.e., a "Pavey" motion), the first step in the proper sequence is for the judge to hold a hearing on the issue of exhaustion. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** When "factual issues relating to the defense of failure to exhaust administrative remedies," are up for consideration, they will be decided by a judge. *Id.* **at 740-41.** A case can only proceed on the merits after exhaustion issues have been decided. *Id.* **at 742.**

In the case at bar, Judge Williams conducted a hearing on October 28, 2013. Plaintiff alleged that the IDOC Defendants were deliberately indifferent to unsanitary conditions of confinement (specifically, a filthy urine-stained mattress Plaintiff was given which resulted in Plaintiff contracting a skin condition, "scabies"). He alleged that the Wexford Defendants failed to provide adequate medical treatment for two medical needs (1) injuries Plaintiff sustained in a fall in December 2010, and (2) the

scabies he contracted from the unsanitary mattress. Both sets of Defendants sought summary judgment based on Plaintiff's alleged failure to exhaust his administrative remedies before filing this suit. The motions raised common questions of law and fact, so Judge Williams held one hearing on all motions.

→ **THE PLRA'S EXHAUSTION REQUIREMENT**

Suits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court. The inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending. *See Perez v. Wisconsin Department of Corr.*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. Bock,* **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[1]

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler***, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** The exhaustion

---

[1] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* **FED. R. CIV. P. 12(d).**

requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. *Jones*, **549 U.S. at 218.** Unexhausted claims may not be brought to court. *Jones*, **549 U.S. at 211,** *citing Porter v. Nussell*, **534 U.S. 516, 524 (2002).**

The Seventh Circuit requires strict compliance as to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey*, **663 F.3d at 903.**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524;** *Booth v. Churner*, **532 U.S. 731, 737 (2001) (noting that PLRA's requirement will help "filter out some frivolous claims.").**

As noted above, because exhaustion is a prerequisite to filing a suit, a prisoner must wait until he has completed the established process and may not file in anticipation that administrative remedies will soon be exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed

prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending. *Perez*, **182 F.3d at 535.**

→ EXHAUSTION REQUIREMENT UNDER ILLINOIS LAW

Inmates confined in the IDOC must adhere to the IDOC's Grievance Procedures for Offenders in order to properly exhaust claims; anything less is a failure to exhaust. **20 Ill. Admin. Code 504.810.** The prisoner must first speak with his Counselor about the issues raised, and if the dispute is not resolved, a grievance must be filed within sixty days of the events or occurrence with the Grievance Officer. **20 Ill. Admin. Code 504.810(a).** The grievance must:

> Contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

The Grievance Officer must review the grievance and report findings and recommendations to the Chief Administrative Officer (Warden). **20 Ill. Adm. Code 504.830(d)**. The prisoner has the opportunity to review the Warden's response. If the prisoner is unsatisfied, he may appeal to the Director through the Administrative Review Board (ARB) within 30 days of the Warden's response. **20 Ill. Adm. Code 504.830(d); 20 Ill. Adm. Code 504.850**. The ARB is then required to provide a written report to the Director of its recommendation on the grievance. The Director "shall review the findings and recommendations of the Board and make a final determination

of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.850(e), (f).**

Alternatively, a prisoner "may request a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer" (CAO). **20 Ill. Adm. Code 504.840**. The CAO must make a determination whether the grievance shall be handled on an emergency basis. **20 Ill. Adm. Code 504.840**. If so, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." **20 Ill. Adm. Code 504.840**. Once the CAO has informed the grieving inmate of its decision, the inmate may then appeal that decision to the Administrative Review Board (ARB) on an expedited basis. **20 Ill. Admin. Code 504.850(g)**. A final decision of the ARB will exhaust the grievance requirement. With these principles and requirements in mind, we turn to the record regarding Plaintiff's exhaustion of the claims underlying this lawsuit.

C.  **Analysis**

Plaintiff alleges that he received a dirty, urine-soaked mattress which caused him to contract scabies, which Defendants did not treat properly. He also alleges that he fell from an upper bunk in December 2010 and sustained injuries which were not treated by Defendants. The record contains the following grievances as to these claims.

**Grievance 04-12-47** relates to the failure to replace the soiled mattress. (Copies of the grievances and related records are provided with Defendants' summary judgment brief at Doc. 58.) The "Nature of Grievance" listed on Grievance 04-12-47 is "nasty mattress" (Doc. 58-1). Plaintiff signed and filed Grievance 04-12-47 on March 1, 2012

(Doc. 58-1, pp. 1-2). It was reviewed by his counselor, then received by the Grievance Office on April 6, 2012, and reviewed and denied on August 17, 2012. It was sent to the CAO on August 20, 2012. The CAO concurred with the recommendation. This grievance was sent back to Plaintiff on September 9, 2012. Plaintiff appealed to the Administrative Review Board on October 5, 2012. The ARB denied the appeal as untimely (*see* Doc. 58-1, p. 4 -- "Not submitted in the timeframe outlined in Department Rule 504").

**Grievance 05-12-174** relates to failure to treat Plaintiff's scabies. Plaintiff signed and filed Grievance 05-12-174 on March 28, 2012 (Doc. 58-2, p. 1). The Nature of Grievance listed thereon references "Staff Conduct" and "Other: Scabies" (*id.*). After Plaintiff's counselor reviewed this grievance, it was received by the Grievance Office on May 31, 2012. The Grievance Officer reviewed and denied the grievance on August 8, 2012 (Doc. 58-2, p. 2). It was sent to the CAO on August 9, 2012. The CAO concurred in the recommendation to deny this grievance on August 10, 21021. The grievance was returned to Plaintiff on August 27, 2012. Plaintiff appealed Grievance 05-12-174. The appeal was received by the ARB on September 12, 2012 and denied on September 25, 2012 as untimely (again, on the basis that it was not submitted by the inmate within the timeframe outlined in Department Rule 504, Doc. 58-2, p. 3).

As to Plaintiff's claim regarding injuries from the December 17, 2010 fall (ongoing knee pain, back pain, and arthritis), Plaintiff alleges that he filed a grievance based on the fall on the same day it happened (*see* Amended Complaint, Doc. 50, p. 80). Judge Williams remarked that this grievance "is not in the record" (R&R, Doc. 104, p. 4).

Plaintiff later filed an *emergency grievance* about the fall, which is in the record. **Grievance E372 (06-12-143)** was signed by Plaintiff on April 15, 2011. Emergency review was denied on May 5, 2012, after which Plaintiff began the normal grievance process. He alleges that he attempted to resolve the issue with his counselor on June 5, 2012, filed his grievance with 60 days of the incident, did not receive pain medication for the injuries until six or seven months after the fall, and needs surgery on his back and foot (Doc. 50, p. 48). The Grievance Office received this grievance (Grievance 06-12-143) on June 28, 2012 and denied it as untimely (Doc. 58-3). A response was sent to Plaintiff on August 16, 2012 (*id.*).

Defendants argued that Plaintiff failed to exhaust as to all of his claims. Judge Williams rejected that argument as to two grievances and accepted it as to the third grievance. Consequently, he recommended that the Court partially grant and partially deny Defendants' summary judgment motions. In other words, Plaintiff "won" on two claims but lost on the third. His objections focus on the part of the R&R which ruled adversely to him – relating to the timeliness of his grievance based on the December 2010 fall from his bunk.

No objection was filed to the portion of the R&R which recommends denying summary judgment as to **Grievance 04-12-47** and **Grievance 05-12-174** – the unsanitary conditions and failure to treat scabies claims. So the Court need not conduct de novo review of that portion of the R&R. The undersigned Chief Judge concludes, as did Judge Williams, that Plaintiff *did* exhaust his administrative remedies as to these two grievances, because delay by prison officials rendered the grievance process effectively

unavailable (Doc. 104, p. 8). These two grievances were held by prison officials for over two weeks before they were returned to Plaintiff. Once the grievances were returned to Plaintiff, he responded within the 30-day window (*id.*).

Plaintiff objects to the R&R as to the conclusion that he did not fully exhaust administrative remedies as to **Grievance E372 (06-12-143)**. Plaintiff contends that the R&R reflects a "misunderstanding" of what the Defendants did – i.e., Plaintiff contends that prison officials thwarted his efforts to exhaust administrative remedies (losing or destroying the original grievance about the December 2010 fall), that he had no control over what happened to that grievance after submitting it, that administrative remedies were "clearly unavailable" to him when prison officials failed to process his December 2010 grievance, and that the record shows a dispute regarding the facts about the December 2010 grievance, so summary judgment is not proper (Doc. 108, pp. 1-7). In his March 30, 2015 supplemental objection, Plaintiff asserts that records supporting his claim were overlooked by Judge Williams.[2]

The undersigned rejects all these arguments. First, Judge Williams did not overlook any grievances. When he remarked that this grievance "is not in the record" (Doc. 104, p. 4), Judge Williams correctly indicated that the *original grievance* – which Plaintiff claims to have filed on December 17, 2010 – does not appear in the record. It is

---

[2] Plaintiff's supplemental objection (Doc. 147) also discusses the law governing deliberate indifference claims (i.e., what a plaintiff must show to prove deliberate indifference), notes that Defendants have not asked for (and should not receive) qualified immunity in this suit, and argues that a genuine issue of material fact precludes entry of summary judgment herein. None of these arguments is on point.

undisputed that Plaintiff filed an *emergency grievance in April 2011.* **Grievance E372 (06-12-143)** was signed by Plaintiff on April 15, 2011. Emergency review was denied on May 5, 2012, after which Plaintiff began the normal grievance process. The references in the record which Plaintiff relies on (e.g., the 5/22/2012 reference in the IGRV Inmate History log, and the 6/28/12 reference in the Grievances summary chart at Doc. 58-3, refiled at Doc. 147, p. 14) directly relate to that grievance, received June 28, 2012 by the Grievance Office and sent to Plaintiff August 16, 2012. As Defendants point out in their response to Plaintiff's objections (*see* Doc. 145, p. 2), the record does not contain evidence of a grievance filed *in* December 2010, and the references to the grievance *relating to* the December 2010 fall came in the grievance "filed well after the deadline set forth in the Illinois Administrative Code."

The undersigned concludes that Plaintiff did not exhaust his administrative remedies as to this grievance – **Grievance E372 (06-12-143)**. The records establish (and Plaintiff's own affidavit attached to his memorandum opposing summary judgment, Doc. 73, p. 23, states) that Plaintiff filed the emergency grievance on April 15, 2011. This was nearly four months after the December 17, 2010 fall from the bunk. IDOC regulations plainly require that all grievances be filed within 60 days of the discovery of the incident giving rise to the grievance. **20 Ill. Admin. Code. 504.810(a).** *See also Cannon v. Washington,* **418 F.3d 714, 717 (7th Cir. 2005).** Plaintiff missed this deadline.

There is no evidence of a December 2010 grievance. Plaintiff's April 2011 grievance fell well beyond the 60-day deadline prescribed in the IDOC's grievance procedures. The April 2011 grievance was untimely, and Plaintiff failed to exhaust his

claim contained in that grievance – the deliberate indifference claim for knee pain, back pain, and arthritis allegedly resulting from the December 17, 2010 fall.

D.    **Conclusion**

For all these reasons, the Court overrules Plaintiff's objection and supplemental objection (Docs. 108, 147), **ADOPTS in its entirety** Magistrate Judge Williams' Report and Recommendation (Doc. 104), and **GRANTS IN PART and DENIES IN PART** Defendants' summary judgment motions (Docs. 57 and 68).

The motions are granted only in that the Court finds Plaintiff failed to exhaust his administrative remedies as to the deliberate indifference claim against Defendants Fenoglio, Martin, Hardy, Kimmel and Wexford Health Services, regarding medical needs resulting from the December 2010 fall.  That claim is **DISMISSED WITHOUT PREJUDICE** based on failure to exhaust.  The motions are otherwise denied.

Still remaining are Plaintiff's claims for subjecting Plaintiff to unsanitary conditions of confinement (the filthy mattress) and deliberate indifference to medical needs as to his skin condition (failure to treat his scabies) against Defendants Fenoglio, Martin, Hardy, Kimmel, Wexford Health Services, Boldrey, and Habing.  The case is set for final pretrial conference February 11, 2016 before Judge Williams and jury trial March 28, 2016 before the undersigned.  Two recently-filed motions seeking appointment of counsel for Plaintiff are pending, both of which are referred to Judge Williams (Docs. 136 and 146).

IT IS SO ORDERED.

DATED March 31, 2015.

        **s/ Michael J. Reagan**
        Michael J. Reagan
        United States District Judge