IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES SULTAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12−cv−1229−MJR−SCW |
| | ) | |
| JAMES FENOGLIO, | ) | |
| PHIL MARTIN, | ) | |
| ELAINE HARDY, | ) | |
| TAMMY KIMMEL, | ) | |
| WEXFORD HEALTH SERVICES, | ) | |
| ROBERT BOLDREY, | ) | |
| BENJAMIN HABING | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### Introduction and Procedural Background

Plaintiff, currently incarcerated at Western Illinois Correctional Center, filed this cause of action on December 3, 2012 while incarcerated at Lawrence Correctional Center, alleging deliberate indifference to serious medical needs against Defendants for failing to treat his injuries caused by falling out of his bunk and a case of scabies. (Doc. 1). Upon threshold review, the Court determined that Plaintiff had stated three claims 1) against Defendants Boldrey and Habing for subjecting Plaintiff to unsanitary conditions of confinement by giving him a dirty mattress; and 2) against Defendants

1

Fenoglio, Martin, Hardy, Sucher, Kimmel and Wexford for deliberate indifference to medical needs; and 3) a medical negligence claim. (Doc. 6). On May 13, 2013, the Court dismissed Plaintiff's medical negligence claim for failure to submit the required affidavit under Illinois law. (Doc 49). The Court also dismissed Deb Sucher for failure to prosecute on October 2, 2013. (Doc. 95). On March 31, 2015, the Court dismissed Plaintiff's claims regarding medical treatment he claims he needed as a result of a December 2010 fall for failure to exhaust. (Doc. 148).

On July 13, 2015, Defendants Fenoglio, Hardy, Kimmel, and Wexford filed their motion for summary judgment. (Doc. 151). The remaining Defendants, after requesting and receiving an extension of time, filed their motion for summary judgment on August 12, 2015. (Doc. 158). Plaintiff filed a response to both motions on September 14, 2015. (Doc. 163). He also filed his own Motion for Summary Judgment. (Doc. 164).

The Court found Plaintiff's Motion for Summary Judgment was untimely, and denied it on February 11, 2016. (Doc. 178). While reviewing the Defendants' motion for summary judgment, the Court noticed several irregularities in Plaintiff's exhibits that he submitted in opposition to the Motion for Summary Judgment. (Doc. 178). The District Judge then referred the matter to the undersigned for an evidentiary hearing pursuant to 28 U.S.C. 636(b)(1)(B) to make a recommendation on whether Plaintiff's case should be dismissed and a strike assessed as a sanction for perjury. (Doc. 178).

Plaintiff filed a Response to the Show Cause order on February 25, 2016. (Doc. 83). He also moved for appointment of counsel on March 7, 2016, and included arguments against the show cause order in that motion. (Doc. 184). Defendants filed a

2

response to Plaintiff's response to the show cause order on March 8, 2016. (Doc. 185). Plaintiff then moved to strike the Show Cause Order itself and also to object "to Defendants' Motion to Dismiss. (Doc. 186). Defendants had no motion to dismiss at that time. The undersigned held a show cause hearing on April 8, 2016. (Doc. 188). Plaintiff appeared pro-se and Dennis Harms, Timothy Dugan, and Dylan Grady appeared for various Defendants. (Doc. 188). For the following reasons, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's case as a sanction for perjury and assess him a **STRIKE** pursuant to 1915A.

## Legal Standard

A party commits perjury "if he gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). "Perjury strikes at the heart of the integrity of the justice system. . ." *United States v. Stokes*, 211 F.3d 1039, 1046 (7th Cir. 2000).

Perjury can justify a default judgment. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand). It is particularly appropriate to dismiss a suit where substantial judicial resources have been wasted due to a party's lies, and the other side has been put through considerable expense defending the case. *Id. See also Hoskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011) (affirming the dismissal of a suit in which the plaintiff lied about his litigation history and the applicability of the prepayment requirement in 28 U.S.C. § 1915(g)); *Ridge Chrysler Jeep LLC v. Daimler*

3

*Chrysler Financial Services Americas LLC*, **516 F.3d 623, 626 (7ᵗʰ Cir. 2011) (affirming dismissal against plaintiff who lied to obtain interlocutory relief);** *Greviskes v. Universities Research Association, Inc.*, **417 F.3d 752, 759 (7ᵗʰ Cir. 2005) (affirming dismissal where Plaintiff engaged in fraudulent conduct that delayed lawsuit);** *Thomas v. General Motors Acceptance Corp.*, **288 F.3d 305, 308 (7ᵗʰ Cir. 2002) (concluding that district court did not abuse its discretion by dismissing case as sanction for lying on application to proceed in forma pauperis)**.

A sanction must be proportional to the nature of the offense, and although grave, perjury may not automatically result in dismissal if it would be an excessive sanction given the context of the case. *Montano v. City of Chicago*, **535 F.3d 558, 564 (7th Cir. 2003)**. It may be appropriate to consider other sanctions before resorting to dismissal. *Rivera*, **767 F.3d at 687**.

### Factual Background

A material piece of Plaintiff's case is that he complained about his untreated scabies rash for months without treatment. But the medical records are completely devoid of any such complaint until February 24, 2012, when Plaintiff received immediate and comprehensive treatment for his rash. The Court notes that Plaintiff was treated by an outside medical provider for his Hepatitis C condition and their records also fail to reflect any complaints about an untreated rash or itching prior to February 27, 2012, despite the fact that the third-party doctor took a comprehensive history of all of Plaintiff's medical complaints at each appointment.

4

Plaintiff's exhibits further complicated matters.  As an exhibit to his response opposing both motions for summary judgment, Plaintiff submitted copies of his request slips that he sent to the Defendants requesting help for his scabies. (Doc. 163-1, p. 2, 4-9).  In their motions, Defendants Martin, Boldrey, Fenoglio, and Habing all consistently deny ever receiving requests from Plaintiff about his dirty mattress and/or scabies condition.  Plaintiff's "Statement of Plaintiff's Exhibits" represents that Exhibits A-K "are sets of IDOC offender requests he made until he got his scabies meds.  They show who he addressed the issue to, they show the month and year they were made."  (Doc. 163-1, p. 2). The individual request slips are marked with "my copy."  (Doc. 163-1, p. 4-9).  The content of the requests slips is fairly uniform.  Plaintiff repeatedly asks for help with "scabies." (Doc. 163-1, p. 4-9).  He also includes complaints about the state of his mattress and pillows on several of the request slips.  (Doc. 163-1, p. 4-9).

Plaintiff submitted a request slip dated December 29, 2011 directed to the health care unit; it lists his cell assignment as R8-U-15.  (Doc. 163-1, p. 4).  Plaintiff submitted another request slip, also showing his housing unit as R8-U-15 to the health care unit and medical staff dated January 23, 2012.  (Doc. 163-1, p. 4).  Plaintiff submitted a third offender request slip dated September 26, 2011 and showing his cell as R8-U-15.  (Doc. 163-1, p. 5).  A fourth one dated October 29, 2011 also shows his cell as R8-U-15, as does another slip dated July 25, 2011 and one dated August 28, 2011, which includes complaints about Plaintiff's mattress and pillow.  (Doc. 163-1, p. 5-6).  Plaintiff also submitted a request slip dated May 31, 2011 complaining about scabies, along with his mattress and pillow, and listing his living unit as R8-U-15.  (Doc. 163-1, p. 7).  He

likewise submitted offender requests dated June 29, 2011, January 30, 2011, February 25, 2011, March 22, 2011, and April 30, 2011 that all raise the issue of his scabies and mattress and all of which show that his living unit as R8-U-15.  (Doc. 163-1, p. 7-9).

The problem with the requests slips dated January 30, 2011 through June 29, 2011 is that Plaintiff was not housed in cell R8-u-15 until June 30, 2011.  (Doc. 159-2, p. 4). The offender tracking system (OTS) shows Plaintiff was housed in R5 CL 22 from December 15, 2010 until February 25, 2011.  (Doc. 159-2, p. 3).  OTS states that Plaintiff was housed in R7 BL 08 from February 25, 2011 until March 18, 2011 when he moved to R7 BL 09.  (Doc. 159-2, p. 3).  Plaintiff stayed in that cell until he was sent to clinic on June 27, 2011.  (Doc. 159-2, p. 3).  He was not assigned to Unit 8 until June 30, 2011, when he was moved to R8 AU 15.  (Doc. 159-2, p. 4).  Not only would Plaintiff not have been housed in R8 AU 15 when he allegedly wrote the requests slips, he would not have been able to anticipate that he would be housed there.  A reasonable inference is that Plaintiff fabricated all of the request slips for the purpose of defeating summary judgment.

Plaintiff admitted that he made up the exhibits in support of his summary judgment motion.  (Doc. 183).

## Analysis

The undersigned concludes that Plaintiff has committed perjury here.  Plaintiff has admitted that he created the request slips at the time that he drafted his response to the pending motion for summary judgment.  The request slips were therefore an intentional falsehood.  Although Plaintiff argues that the discrepancies in the request

slips were the result of forgetfulness and a mental disorder on his part, as discussed more fully below, the undersigned does not find that argument convincing. The request slips also go to the issue of whether all of the Defendants had the requisite subjective mental state, a material issue in this litigation. Finally, the undersigned finds that the sanction of dismissal is warranted because if Plaintiff's exhibit were credited, it would defeat summary judgment and force the Defendants into a jury trial at considerable time and expense to them and to the Court. Plaintiff is also a frequent litigator in this Court, and the Court must devote substantial time and resources towards addressing his cases. Having brought a case that he has attempted to support by lies and falsehood, the undersigned also finds it appropriate to assess a strike against him. In the interest of comprehensiveness, the Court addresses the arguments Plaintiff made in opposition to the Show Cause order below.

**a) Plaintiff's arguments that the perjury was caused by faulty memory**

Plaintiff's written response to the show cause order concedes that he made up the request slips. Plaintiff attempts to justify his conduct by stating "the Plaintiff has not really outright lied to this Court because thought [sic] in his mind that what he was putting down on paper was right." (Doc. 183, p. 2). Plaintiff went on to attribute the phony exhibits to his memory problems. (Doc. 183). He variously attributes these memory problems to an unknown psychotropic medication that he was prescribed in 2008 or 2009 that made him forgetful, a family history of Alzheimer's disease, and general "forgetfulness." (Doc. 183, p. 2). Plaintiff further suggests that he may have un-diagnosed Alzheimer's disease. (Doc. 183, p.5).

At the hearing, Plaintiff introduced his deposition, currently in the record at Doc. 152-1 to show that he frequently makes "mistakes" as evidence of his mental incapacity. Plaintiff was specifically asked during his deposition if he was taking any medications that would affect his judgment or thinking, and answered that he did not know of any. (Doc. 152-1, p. 2). Plaintiff also represented that he was only taking medication for diabetes and high blood pressure. (Doc. 152-1, p. 2). As an example of his poor memory, Plaintiff represents that his deposition testimony that he slept on the filthy mattress until 2004 was obviously mistaken. (Doc. 152-1, p. 3). However, in response to further questioning by counsel, Plaintiff immediately clarified that he got the mattress in December 2010. (Doc. 152-1, p. 3). Plaintiff also reserved his signature so that he could review the deposition for errors, but none of the corrections, if any, are in the record. (Doc. 152-1, p. 23). The deposition provides little support for Plaintiff's contention that he has a pathological memory problem. At most, it just shows that Plaintiff, like most people, lacks perfect recall.

Plaintiff testified at the April 8th hearing that he believed that Buspar caused him to have difficulties remembering things. (Doc. 191, p. 14). Plaintiff testified that one morning in either 2006 or 2007 he woke up and could not spell his own name, which he attributed to the medication he was on at that time. (Doc. 191, p. 23). Plaintiff stopped taking psychotropic medication in 2010 or 2011. (Doc. 191, p. 16). Plaintiff testified that he forgets dates, and testified that he believed the hearing was being held on the 17th, when it was actually held on the 8th. (Doc. 191, p. 24). Plaintiff was not taking any

psychotropic medications at the time of his deposition nor on the day of the hearing. (Doc. 191, p. 26).

The medical records submitted by Defendants indicate that Plaintiff was frequently prescribed Buspar and Celexa to address his complaints of depression and anxiety.  Forgetfulness is not a side effect of either drug.  Buspar, PubMed Health http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009364/?report=details#side_ef fects (last accessed on May 18, 2016); Celexa, PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009639/?report=details#side_ef fects (last accessed May 18, 2016.  There is no record of Plaintiff ever being diagnosed with Alzheimer's and no medical care provider has recorded any complaints about forgetfulness.  Other symptoms of Alzheimer's include mental decline, difficulty thinking and understanding, confusion in the evening hours, delusion, disorientation, forgetfulness, making things up, mental confusion, difficulty concentrating, inability to create new memories, inability to do simple math, or inability to recognize common things.  Alzheimer's disease, www.google.com/search?q=Alzheimer's+disease (last accessed May 18, 2016).

The undersigned does not find Plaintiff's claims of forgetfulness credible.  First of all, Plaintiff filed nine requests for counsel in this case prior to the entry of the show cause order.  (Doc. 2, 21, 39, 81, 93, 114, 136, 146, 165).  Some of these motions run to a dozen pages or more, but not once did Plaintiff state that he suffers from forgetfulness, faulty memory, or Alzheimer's. As pointed out by the defense, Plaintiff, a frequent litigator in this Court, also filed documents in 15-cv-611-SMY-SCW during the same

time period that he filed his response to the summary judgment motion, and not once in those documents does he allude to a memory problem.  Plaintiff has not made that claim until confronted with evidence of his perjury.  Although Plaintiff points to mistakes in his deposition, normal memory function does not have to be perfect, and there is nothing in the deposition that suggests that Plaintiff is cognitively impaired. The mistakes that Plaintiff identified in his deposition are distinguishable from the request slips.  People frequently make minor mistakes about dates and times when asked about events that occurred far in the past.  The request slips, in contrast, show a calculated intent to deceive.  Plaintiff admitted that he made them up for his Response, and has not been able to point to any place in the Response where he explained that they were merely demonstrative.

Additionally, having observed Plaintiff during the show cause hearing, Plaintiff does not demonstrate signs of Alzheimer's.  Alzheimer's is more than the occasional moment of forgetfulness that people suffer.  Alzheimer patients have trouble focusing and concentrating on events around them.  Yet ever since the Court raised this issue, all of Plaintiff's filings have all addressed the Court's concerns and the evidence that supports those concerns.  While they are less proficient than that of an attorney, Plaintiff has clearly articulated the reasons that he thinks his conduct was justified, cited to case law, identified evidence already in the record that he believes supports his contention, and participated in a hearing on the matter.  Plaintiff's arguments address the showing the case law says is required to avoid a sanction for perjury, suggesting that he both researched the case law and has been able to apply the relevant law to the facts here.  At

10

no time did the undersigned observe Plaintiff to demonstrate confusion about the proceedings or his arguments opposing the proceedings. He was not delusional and demonstrated focus and concentration. The undersigned therefore finds Plaintiff's claims that he suffers from some kind of mental disorder that causes forgetfulness to be not credible, particularly in light of the lack of a proper medical diagnosis or similar complaints in his medical records.

The other problem with Plaintiff's forgetfulness argument is that it minimizes the problems with the request slips. Plaintiff also argues that since not all of the request slips are "wrong" it would be an abuse of discretion to dismiss the case. (Doc. 186, p. 3). But quite frankly, the claims that Plaintiff makes in the doctored request slips are also problematic. Plaintiff frequently complains specifically of "scabies" throughout all of the request slips. When he was diagnosed on February 24, 2012 however, even the doctor was not completely sure that the problem was scabies; he included both scabies and a fungal infection on the differential diagnosis. (Doc. 152-19, p. 75). The doctor did not know for sure it was scabies until Plaintiff responded to treatment for scabies. Yet all of Plaintiff's request slips say he had scabies, instead of describing symptoms like a rash or itching. This suggests that the request slips are not re-creations of request slips that Plaintiff sent at the time, but rather slips created with the benefit of hindsight.

The request slips also continually complain about needing a new mattress and pillow. Plaintiff's OTS records show that he was moved into four different cells during the time period covered by the request slips. Despite the fact that Plaintiff claims he was given a dirty mattress and forced to sleep on it from December 2010 and until

11

February 2012, Plaintiff's OTS summary shows that he moved into a new cell with a different mattress on February 25, 2011, nearly a year before he claims he got a new mattress.  Plaintiff would have gotten a different mattress and pillow in each new cell assignment because the beds stay with the cell, not the offender.  This is another fact that is not reflected in the content of the request slips.  It is clear to the undersigned that Plaintiff did more than just "misremember" a few relevant dates—he fabricated the request slips specifically to fit his narrative of the case.

### b) Plaintiff's procedural arguments

Plaintiff also attempted to justify his creation of the request slips by arguing that they are not really part of this case.  In his request for counsel, he notes that he never produced any request slips in discovery.  (Doc. 184, p. 4).  Specifically, he states "the information in these request slips made-up from Plaintiff's memories they[sic] have never been placed into his discovery no placed into 'admission as evidence.'" (Doc. 184, p. 5).  Plaintiff also states that he never authenticated the request slips or sent the Defendants requests to admit regarding the request slips.  (Doc. 184, p. 5) (Doc. 186, p. 3).  He states that he never disclosed the request slips to Defendants.  (Doc. 186, p. 5).  He claims that Defendants should have procured the request slips, but that they informed him that they do not keep copies of them.  (Doc. 184, p. 4).  Finally, Plaintiff argues that the request slips were actually part of the record he submitted with his own previously-denied motion for summary judgment, and as such the documents are "dead" and cannot be relevant to any further proceedings. (Doc. 186, p. 4).

Plaintiff's arguments regarding the fact that the request slips were never produced in discovery or authenticated are misplaced. Plaintiff had an obligation to produce all relevant materials in his possession during discovery. The Court ordered as much at Doc. 43. Plaintiff is correct that exhibits used in opposition to summary judgment should have been produced in discovery and authenticated, but this fact does not excuse his behavior. It highlights the egregiousness of the behavior. Plaintiff could not have produced the phony request slips in discovery because they did not exist yet. He could not authenticate them because they are not authentic and not subject to the normal proofs of authentication. This leaves the Defendants blindsided by evidence on summary judgment and is grossly unfair. Plaintiff cannot excuse his behavior, after filing documents with the Court, by arguing that the documents are not really part of the case after all because he did not follow the rules earlier.

Plaintiff also alleges that in his list of exhibits that he attached to the response in opposition to the summary judgment motion indicated that he made up the request slips. (Doc. 186, p. 3). At one point, he states that his motion for summary judgment included the statement: "Plaintiff's exhibits set of [A-thru-K] are some of the request [sic] he has made to get the scabies addressed by the HCU at LCC. There are copies with the month and year made to HCU." (Doc. 186, p. 8). This statement is another falsehood. The undersigned has examined the statement that Plaintiff included with his exhibits in opposition to the summary judgment motion and it omits the "copies" language. Instead he originally stated: Exhibits A-K "are sets of IDCO offender requests

[Plaintiff] made until he got his scabies meds.  They show who he addressed the issue to, they show the month and year they were made."  (Doc. 163-1, p. 2).

Contrary to Plaintiff's claims in his various filings after the Court issued its show cause order, Plaintiff did not identify the request slips as demonstrative exhibits at any time.  Other than the notation "my copy" on each request slip, which implies that the request slips hand-written copies of request slips that Plaintiff actually sent, there is no indication that the request slips were not original.   It is common practice for prisoners to create hand-written copies of kites and other documents contemporaneously when copies are not readily available.  But the request slips are not truly copies; they are wholesale re-creations.  They do not have the veracity that a true copy would have.  The undersigned finds that Plaintiff clearly intended to mislead the Court with these exhibits.

Plaintiff's argument that the exhibits were actually to his denied motion for summary judgment and therefore not relevant is also a non-starter.  Materiality is the touchstone for perjury.  Evidence is material if it has "a natural tendency to influence or [is] capable of influencing the decision of the decisionmaking body to which it was addressed."  *United States v. Lupton*, **620 F. 3d 790, 806 (7th Cir. 2010)**.  It is irrelevant whether the exhibit actually affects the decision.  *United States v. Grigsby*, **692 F.3d 778, 785 (7th Cir. 2012);** *see also Alexander v. Caraustar Indust. Inc.*, **930 F.Supp.2d 947, 957 (N.D. 2013) (If [a litigant could defeat a perjury sanction by abandoning the relevant claim] . . . litigants could lie about claims to the point of getting caught, then withdraw those claims with impunity.  It would be well worth it to pursue a pattern**

14

of perjury because there would be no risk, either civilly or criminally so long as the perjurer abandoned the claims intended to be supported by the perjurious testimony.")

Here, Plaintiff has alleged deliberate indifference on the part of medical and security staff. This requires him to show that 1) he had an objectively serious medical condition; 2) the defendants subjectively knew about the condition and choose to ignore it. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005). The request slips go to the subjective component. They attempt to demonstrate to the fact finder that the Defendants had actual knowledge of Plaintiff's condition. They also create an inference that Defendants were deliberately indifferent because Plaintiff can point to the lack of response to the request slips. Contrary to Plaintiff's claims, the request slips are evidence of a key contention in this case, and therefore the misrepresentation is material. Even if they were filed with Plaintiff's Motion for Summary Judgment, that is irrelevant because the Court could consider them for the purposes of determining a material issue in this case.

### c) Plaintiff's argument that the Court's "mistakes" justify his own

Plaintiff also argues that summary judgment should have been granted in his favor because the Court overlooked medical records where providers reported itching. Plaintiff misunderstands the Court's point in its show cause order that there are no records of itching until February 2012. Plaintiff argued that he caught scabies from a dirty mattress he was issued in December 2010. If that were accurate, one would expect to find reports of itching in the medical records between December 2010, when the

15

itching presumably started and February 2012, when the Defendants began treating it. However, there are no reports of itching until February 2012, despite the fact that Plaintiff sought and received health care for numerous aliments during that time.

Plaintiff alleges in his response that the medical records show that he reported itching on June 20, 2012 and February 27, 2012.  (Doc. 183, p. 3).  Those dates are not relevant to the Court's point because they did not occur prior to Fenoglio diagnosing and treating the scabies.  Those dates do not show deliberate indifference because they occurred after Plaintiff received treatment.  The Court did not overlook them; they were not relevant to the point that no medical records documenting Plaintiff's complaints existed during the time that Plaintiff alleges that he was going untreated.

While the conduct of other parties can occasionally justify a lesser sanction for perjury based on the overall conduct of the case, the undersigned has found no case where a court is obligated to excuse perjury because of a party's perception of its behavior.  The Court strives to be fair, impartial and to uphold the law.  If Plaintiff feels that the Court has not done its duty, the proper course is to appeal to the Court of Appeals.  Plaintiff has successfully prosecuted appeals in the past and is familiar with the process.  Perpetuating a fraud on the Court is not excusable, however.

### Conclusion

The undersigned **RECOMMENDS** that the District Judge **DENY** Plaintiff's Motion to Strike the Show Cause Order as improper and unfounded. (Doc. 186).  To the extent that the motion raised further objections to the Show Cause Order, it has been considered.  The undersigned further **RECOMMENDS** that the District Judge find that

16

Plaintiff has not shown cause and that he has committed perjury before this Court.  The undersigned **RECOMMENDS** that the district judge **DISMISS** this case and assess Plaintiff a **STRIKE** as a sanction for his behavior.  **Objections to this Report and Recommendation must be filed on or before June 6, 2016**.  *See* **Fed. R. Civ. P. 6(d); SDIL-LR 5.1(c).**

**IT IS SO ORDERED.**

**DATED: May 19, 2016**

*/s/ Stephen C. Williams*
**STEPHEN C. WILLIAMS**
**United States Magistrate Judge**